<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

GEORGE W. BOULDEN,

           Plaintiff,

    v.

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

          Defendant.

Civil No. 07-4343(RMB)

**OPINION**

APPEARANCES:

Robert Anthony Petruzzelli, Esq.
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Susan Jane Reiss
        Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

**BUMB**, United States District Judge:

## I.   **Introduction**

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration ("the Commissioner"), denying the application of Plaintiff, George W. Boulden (hereinafter "Plaintiff"), for Disability Insurance Benefits (hereinafter "DIB"). For the reasons set forth, this Court vacates the decision below and remands the case to the ALJ for further proceedings.

## II. Background

### A. Procedural History

Plaintiff filed a DIB application on July 21, 2004, alleging a disability onset of June 2, 1998. (R. at 15). This application was denied both initially and upon reconsideration. (R. at 28-32, 35-37). On November 22, 2005, Plaintiff filed a Request for Administrative Hearing, (R. at 38), and a hearing was held before ALJ Christopher K. Bullard on March 8, 2007. (R. at 171-208). On April 17, 2007, the ALJ issued a decision denying Plaintiff's claim. (R. at 12-24). Following this denial, Plaintiff filed a Request for Review by the Appeals Council. (R. at 10-11). The Appeals Council denied the Request in an August 14, 2007 decision, which became the final decision of the Commissioner. (R. at 4-7). On September 10, 2007, Plaintiff filed the above-captioned action seeking review of the Commissioner's determination.

**B.     The Record**

1. *Hearing Testimony*

At the Administrative Hearing on March 8, 2007, Plaintiff testified that he was 59-years-old, born on December 2, 1947. (R. at 176).  Plaintiff graduated from high school and attended computer programming school for a few months in 1967.  (R. at 177).  Plaintiff was drafted in 1968, did basic training at Fort Dix, did a tour of Vietnam in the U.S. Army, and was honorably discharged six years later after two years of active duty.  (R. at 177).

In the early 1980's, Plaintiff worked as a bartender at the Outer Limits Night Club (part-time) and the Silver Saddle Saloon. (R. at 182-83).  In the late 1980's, Plaintiff assembled radio units for the Navy at RCA.  (R. at 183).  Plaintiff testified that his job required him to sit at a desk and carry different parts, which got heavier over time.  (R. at 183-84).  Plaintiff clarified that while working at RCA in 1988, Plaintiff collected disability for back and leg pain from Metropolitan Life Insurance Company.  (R. at 183).  After Plaintiff was laid off from RCA in 1989, he collected "money that [RCA] had put aside . . . each week, sort of like a pension."  (R. at 184).  Plaintiff bartended at the Outer Limits Night Club in 1992 and 1993.  (R. at 56). Plaintiff did not work from 1989-1991 and 1994-1996 because of his back pain.  (R. at 191).

In 1997 and 1998, Plaintiff worked 32-hours a week, five days a week as a clerk in the County Clerk's Office.[1]  (R. at 179-80).  Plaintiff testified that his job as a clerk required him to look up mortgages, call banks and mortgage companies, and distribute mail.  (R. at 179).  Plaintiff had to carry heavy mortgage books containing county records, often carrying three to four books at a time.  (R. at 179, 195).  Plaintiff testified that each book weighed approximately between eight and ten pounds.  (R. at 195).  Plaintiff noted in response to a question posed by the vocational expert ("VE"), however, that he could carry one book at a time if it weighed eight pounds or less.  (R. at 195-96).  Plaintiff testified that the mailbag was quite heavy, and he usually had to drag the bag because he was unable to lift it.  (R. at 195).  Plaintiff stopped working because of his back condition.  (R. at 180).  He was unable to sit for long periods of time and carry heavy items, such as the county record books.  (R. at 180).  He testified that the pain was excruciating, and he would have to take little walks throughout the day.  (R. at 180).  Plaintiff had to leave his job in 1998 because his back pain precluded him from being able to sit for long periods of time and carry items.  (R. at 184, 207).  Subsequently, Plaintiff's doctor put him on disability for four months.  (R. at 180).

---

[1] Plaintiff testified that the 32-hour workweek was considered a full-time job.  (R. at 180).

4

Plaintiff did not work from 1998 until 2001.  (R. at 181).
In 2001, Plaintiff's ex-brother-in-law hired him to work part
time as a receptionist at a car dealership, Bell Auto Sales.  (R.
at 181).  Plaintiff explained that his ex-brother-in-law hired
him as a favor because Plaintiff was unemployed and could not
find a job because of his condition.  (R. at 182).  At the
dealership, Plaintiff answered phones, carried auto parts, and
put tags on cars.  (R. at 181).  Plaintiff testified, however,
that the job required more than he could handle, and Plaintiff
had to lie down while at this job.  (R. at 190, 196).  Plaintiff
worked at Bell Auto Sales five hours a day, three days a week and
earned approximately $10 an hour.  (R. at 182).  Plaintiff has
not worked anywhere since he left his job at Bell Auto Sales in
2002.

Between 1998 and 2000, Plaintiff was treated by a
chiropractor, Dr. Jaffe.  (R. at 185).  This treatment, however,
did not improve his condition.  (R. at 185).  Plaintiff also
testified that he underwent traction and a myelogram, which
revealed deteriorating discs.  (R. at 185).  Plaintiff had an
aortic coronary bypass graft for angina in 2000, and in May of
2002, he had an ablation for Wolff-Parkinson-White Syndrome.  (R.
at 185-87).  Plaintiff explained that for years he suffered from
Wolff-Parkinson-White Syndrome, which causes rapid heartbeats and
palpitations.  (R. at 186).  Although Plaintiff has not
experienced the same palpitations since the 2002 ablation, he

suffers from anxiety and "panic attacks" and continues to have chest pain. (R. at 187). Plaintiff testified that following these procedures, it was his lower back pain that prevented him from returning to work where he would have to sit for most of the workday. (R. at 188).

Plaintiff testified that during the relevant time period, 1998-2002, he lived with his wife, from whom he is now separated. (R. at 188). During that time, Plaintiff mostly stayed home, and his wife took care of him. (R. at 189-90). He testified that he did not usually help with household chores, and he had to drag the bag when he took out the trash. (R. at 190). Plaintiff explained that he is always short of breath, has lower back pain, and cannot sit for long periods of time. (R. at 190).

At the hearing in front of the ALJ, the vocational expert ("VE"), Mitchell Schmidt, testified. The VE recounted Plaintiff's prior work as classified by the Dictionary of Occupational Titles ("DOT"): bartender, DOT Code 312.474-010, which was light, semi-skilled work with a SVP of 3; county clerk, DOT code 205.362-010, which was sedentary, semi-skilled with a SVP of 3, though he may have performed at a light duty level; receptionist (at car dealer), DOT Code 237.367-038, sedentary, semiskilled with a SVP of 4, although this job was performed with some modifications (i.e., being able to lie down). (R. at 197).

The ALJ asked the VE to consider a hypothetical worker who is 55-years old, has a high school education, with the following

exertional limitations:  can sit for up to one hour at a time and for a total of six hours out of an eight hour workday, can stand for 30 minutes at a time and for a total of four hours out of an eight hour workday, can walk for up to 30 minutes at a time and for a total of two hours out of an eight hour workday, can lift 20 pounds occasionally and 10 pounds frequently, can carry 20 pounds occasionally and 10 pounds frequently, can only occasionally climb stairs or ladders, can only occasionally perform job tasks involving a good sense of balance.  (R. at 198).  Based on the hypothetical, the VE stated that Plaintiff could perform all of his past work as it is classified by the DOT, with the exception of the receptionist job where Plaintiff was permitted to lie down because that job is not customarily performed that way.  (R. at 198-99).

The ALJ modified the hypothetical and asked the VE if he would change his answer if the individual could sit for up to one hour at a time, but could only sit for four hours in an eight hour workday, leaving the other standing and walking limitations in place.  (R. at 199).  The VE testified that this RFC might preclude work as a bartender because a bartender stands and walks six hours a day, unless they are not busy in which case there may be more opportunities to sit down.  (R. at 199).  When Plaintiff's attorney questioned the VE, the VE testified that a job as a bartender would require an individual to be able to stand and walk for eight hours a day.  (R. at 201).  The VE

further testified in response to the ALJ's hypothetical that if the individual had to take frequent, unscheduled breaks during the day, the individual would not be able to sustain any kind of employment. (R. at 199).

2. *Other Records*

Plaintiff described his activities of daily living in Exhibit 4E and indicated that during a typical day he watches television and takes walks and naps. (R. at 82). Plaintiff indicated that he is able to take out the trash twice a week, do laundry once a week, and go grocery shopping once a week. (R. at 84-85). Plaintiff noted that his son makes his meals. (R. at 84). Plaintiff also indicated that he goes fishing with a friend once a month and tries to visit family members once a week. (R. at 86). In Exhibit 5E, a Functional Assessment Questionnaire for Claimant with Heart Disease, Plaintiff noted that he has sharp shooting chest pain on and off everyday, (R. at 91), and experiences fatigue, palpitations, and lightheadedness, (R. at 92). In Exhibit 6E, a Pain Report, Plaintiff stated that his leg and back pain is caused by any physical work and for sitting, standing, and walking for long periods of time. (R. at 98).

Steven P. Kutalek M.D. saw Plaintiff on May 15, 2002, for an arrhythmia consultation. (R. at 109). Plaintiff reported that while in the past the palpitations from the Wolff-Parkinson-White syndrome could be relieved with valsalva, over the past few

months, the frequency and duration of his palpitations had increased.  (R. at 109).  On one occasion, Plaintiff had to go to the emergency room to receive Adenosine therapy.  (R. at 109). Plaintiff's medications included Zocor, aspirin, and beta blocker.  (R. at 109).  Plaintiff reported that he had experienced slow weight loss and had been exercising and lifting weights.  (R. at 109).  An ECG demonstrated sinus bradycardia at a rate of 54 bpm with evidence for ventricular pre-excitation, which was consistent with a left anterolateral AV accessory pathway conducting in the antegrade direction.  (R. at 110).  Dr. Kutalek's impressions included recurrent supraventricular tachycardia, most likely orthodromic SVT through the AV accessory pathway; Wolff-Parkinson-White syndrome; and coronary artery disease, status post aortocoronary bypass graft two years ago with recent negative stress test.  Dr. Kutalek recommended cardiac electrophysicologic testing and trans-septal catherization for access to the pathway for radiofrequency ablation.  (R. at 110).

Plaintiff was hospitalized at Hahnemann University Hospital from May 28 through May 29, 2002.  (R. at 143).  He successfully underwent radio frequency ablation of the AV accessory pathway via trans-septal puncture.  (R. at 143-160).  He was discharged the following day on Zocor, aspirin, and Lopressor and was asked to return in two weeks.  (R. at 143).

On October 29, 2002, A.A. Unwala, M.D., Plaintiff's treating

9

cardiologist since September 2000, saw Plaintiff for an examination following his ablation.  (R. at 113).  Plaintiff explained that he had some chest pain, which was somewhat relieved by Tylenol, and occasional palpitations.  (R. at 113). In addition, Plaintiff reported that he had been under a lot of stress recently, was depressed, and wanted to go on disability. (R. at 113-14).  Dr. Unwala noted that Plaintiff seemed stable and had no significant angina.  (R. at 113).

The Record also contains a physical residual functional capacity assessment completed by a State agency physician on June 11, 2005.  (R. at 130-38).  The State agency physician indicated that Plaintiff could perform light exertional level work:  he could lift and carry 20 pounds occasionally and 10 pounds frequently, and could stand and/or walk for about six hours and sit for about six hours during an eight hour workday.  It was also noted that Plaintiff had postural limitations, which restricted him to only occasional balancing and climbing of ladders/ropes/scaffolds.  (R. at 131-35).  The State agency physician's report was based on medical records from the relevant time period.  (R. at 131-32, 135).

On November 4, 2005, Dr. Edward L. Lundy, Plaintiff's treating physician beginning in January 2004, completed a medical source statement of Plaintiff's ability to perform work-related physical activities.  (R. at 161-63).  Dr. Lundy indicated that Plaintiff could lift up to 20 pounds occasionally and 5 pounds

frequently; could walk for up to four hours, stand for up to three hours, and sit for up to four hours during an eight hour workday.  (R. at 161).  Dr. Lundy further noted that Plaintiff could not use his hands for repetitive pushing/pulling; had postural limitations that restricted him to only reaching above shoulder level occasionally and that precluded him from bending, stooping, squatting, crawling, climbing; and he had environmental limitations that restricted him from even moderate exposure to marked changes in temperature/humidity and moving machinery and precluded him from exposure to unprotected heights.  (R. at 161).  An EKG that Dr. Lundy performed on November 4, 2005, revealed minor ST-T changes of equivocal significance and was described as borderline normal.  (R. at 162-3).

### 3. *ALJ Decision*

In his decision, the ALJ found that, based on the evidence of record, Plaintiff "was <u>not</u> under a definition of 'disability' within the meaning of the Social Security Act from June 2, 1998 through the date last insured," December 31, 2002.  Therefore, Plaintiff was not entitled to Disability Insurance Benefits.  (R. at 15, 17).

The ALJ concluded at Step One of the sequential evaluation process that Plaintiff had not engaged in substantial gainful activity ("SGA") during the period of his alleged disability.  (R. at 17).  At Step Two, the ALJ found that Plaintiff had the

following severe impairments through the date last insured:
status post open heart surgery, coronary artery disease, and
Wolff-Parkinson-White Syndrome.  (R. at 18).  The ALJ further
concluded at Step Three that Plaintiff did not suffer from an
impairment or combination of impairments that met or medically
equaled one of the listed impairments in 20 C.F.R. Part 404,
Subpart P, Appendix 1.  (R. at 18-19).

At Step Four, the ALJ initially determined that Plaintiff
had the following residual functional capacity ("RFC") through
the date last insured:

> [C]apacity to perform a full or wide range of light
> exertional level work; i.e. he could lift and carry up
> to 20 pounds occasionally and 10 pounds frequently, and
> could stand for 4 hours (in 30 minute intervals), walk
> for 2 hours (in 30 minute intervals), and sit for about
> 6 hours (in one hour intervals) during an 8-hour
> workday.  In addition, the claimant had postural
> limitations which restricted him to only occasional
> balancing and climbing.

(R. at 19).  In assessing Plaintiff's RFC, the ALJ acknowledged
that he must consider opinion evidence and all symptoms and the
extent to which the symptoms could reasonably be accepted as
consistent with the objective medical evidence and other evidence
of record.  (R. at 19).  The ALJ stated, however, "there is
simply no medical documentation . . . to support the existence or
severity of [Plaintiff's] back complaints during the time period
at issue."  (R. at 20).  Moreover, the ALJ noted that following
Plaintiff's heart surgeries, he was able to return to work as a
receptionist/car salesman for almost two years.  (R. at 20).

12

The ALJ provided a detailed description of the medical evidence of record. (R. at 20-22). Even though Plaintiff's insured status expired on December 31, 2002, the ALJ included discussion in his opinion of medical records from after that date. (R. at 21). In particular, the ALJ assigned significant weight to the RFC assessment performed by a State agency physician reviewer on June 11, 1005. (R. at 21-22). However, the ALJ assigned little or no weight to a statement of ability to perform work-related activities completed by Dr. Edward Lundy on November 4, 2005, because the assessment "was completed almost three years after the expiration of [Plaintiff's] insured status, and [did] not indicate what time period it covered." (R. at 22).

After reviewing the entire record, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms[,]" Plaintiff's "statement's concerning the intensity, persistence and limiting effects of his symptoms and limitations seem[ed] exaggerated considering the limited objective medical evidence of record, and [were] not entirely credible." (R. at 23). Even though the ALJ found that Plaintiff's work as a receptionist/car salesman was not SGA, he noted that Plaintiff's ability to perform this work part time for almost two years after the alleged onset of his disability, was evidence that Plaintiff exaggerated his testimony. (R. at 23).

13

Finally, the ALJ found that Plaintiff's past relevant work as a bartender and county clerk, and his former employment as a receptionist/car salesman, were within Plaintiff's RFC.  Thus, except for brief periods immediately before and after Plaintiff's two heart surgeries, he was able to perform his past relevant work both as he had actually performed the jobs and as the jobs are generally performed in the national economy.  (R. at 23-24).  The ALJ further held that the hypothetical that he posed to the VE accurately described Plaintiff's functional limitations during the time period at issue and that the VE's testimony was consistent with the DOT.  (R. at 23).

In seeking review, Plaintiff avers that the ALJ failed to engage in a function-by-function assessment when determining his RFC, including improperly affording insufficient weight to the treating physician's findings.  He also argues that the ALJ improperly considered all of Plaintiff's former work as past relevant work for the purposes of the ALJ's Step Four determination, most of which was not substantial gainful activity.  Lastly, Plaintiff contends that the ALJ relied on flawed expert testimony and failed to properly consider Plaintiff's functional limitations, including cardiac impairments, in relation to the demands of his past relevant work.

14

**III. Standard of Review:**

When reviewing a final decision of the Commissioner, the Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "'Supported by substantial evidence'" means more than a "'mere scintilla.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir 1999).  It means "'such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion.'"  Id.  Where the ALJ's findings of fact are supported by substantial evidence, this Court is bound by the findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  Claussen v. Chater, 950 F. Supp. 1287, 1292 (D.N.J. 1996) (citing Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983)).

This Court must review the evidence in its totality. Ahearn v. Commissioner of Social Sec., 165 Fed. Appx. 212, 215 (3d Cir. 2006); Daring v. Heckler, 727 F.2d 64, 70 (3d Cir 1984). However, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-

15

finder." <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992); <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984). Where substantial evidence of record supports the Commissioner's findings, those findings are conclusive, even "where [the] evidence in the record is susceptible to more than one rational interpretation." <u>Alexander v. Shalala</u>, 927 F. Supp. 785, 791 (D.N.J. 1995), <u>aff'd per curiam</u> 85 F.3d 611 (3d Cir. 1996).

The Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986). Access to the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978)(citations omitted).  While the ALJ must review and consider pertinent medical evidence, review all non-medical evidence, and "explain [any] conciliations and rejections," <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004); <u>see Fargnoli v. Halter</u>, 247 F.3d 34, 42

16

(3d Cir. 2001) ("Although we do not expect the ALJ to make
reference to every relevant treatment note in a case where the
claimant . . . has voluminous medical records, we do expect the
ALJ, as the factfinder, to consider and evaluate the medical
evidence in the record consistent with his responsibilities under
the regulations and case law.").  Overall, the Court must set
aside the Commissioner's decision if the Commissioner did not
take the entire record into account or failed to resolve
evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277,
284-85 (D.N.J. 1997)(citing Gober v. Mathews, 574 F.2d 772, 776
(3d Cir. 1978)).

     In addition to the substantial evidence inquiry, this Court
must review whether the administrative determination was made
upon application of the correct legal standards.  Sykes v. Apfel,
228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721
F.2d 445, 447 (3d Cir. 1983).  This Court's review of legal
issues is plenary.  Sykes, 228 F.3d at 262; Schaudeck v.
Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir.
1999).


**IV. Discussion**

     **A. "Disability" and Disability Insurance Benefits Standard**

     The Social Security Act (the "Act") defines disability as
the inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v); Giese v. Commissioner of Social Security, 251 Fed. Appx. 799, 801-02 (3d. Cir 2007).

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, or is expected to end in death, the claimant will be found "disabled."

4. If the claimant is found to have the residual

18

functional capacity ("RFC")[2] to still perform his past relevant work ("PRW"), he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's RFC, age, education and work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

Id.

   This analysis involves a shifting burden of proof.  Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  In the final step, however, the Commissioner bears the burden of proving that work is available for the petitioner: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform[.]"  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).


   **B. Plaintiff's Arguments**

      *1. Residual Functional Capacity Determination*

───────────────────

[2] Defined as what a person is still able to do despite the limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a) and 416.945.

Plaintiff argues that the ALJ violated Social Security Ruling ("SSR") 96-8p in his assessment of Plaintiff's RFC because the ALJ failed to engage in a function-by-function assessment of Plaintiff's ability to do work-related activities.  (Pl.'s Br. 12, 16).

RFC is defined as "the most you can still do [in a work setting] despite your limitations."  20 C.F.R. § 404.1545(a)(1); see Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).  The ALJ assesses the claimant's RFC based on all of the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  Determination of a claimant's RFC is the exclusive responsibility of the ALJ.  20 C.F.R. §§ 404.1527(e)(2), 404.1546(c), and 416.946.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p. SSR 96-8p requires the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  Id.  SSR 96-8p also requires that the ALJ "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  Id.  Without the "function-by-function" assessment required by SSR 96-8p, it is impossible to know how or

20

why the ALJ concluded that a claimant was able to perform his or her past relevant work.  Id.

Third Circuit case law holds that the ALJ's RFC assessment must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'"  Fargnoli v. Halter, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  An ALJ's findings should be as comprehensive and analytical as feasible.  Cotter, 642 F.2d at 705.  Though the ALJ does not have to undertake an exhaustive review of all the evidence, see e.q., Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)), the ALJ needs to indicate the evidence that supports his decision and the evidence that was rejected.  Cotter, 642 F.2d at 705.  This is necessary so that the court can determine if the ALJ's decision is supported by substantial evidence.  Id.

This Court finds that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence and that the ALJ performed a function-by-function analysis of Plaintiff's work-related limitations.  During his Step Four analysis, the ALJ assessed Plaintiff's capacity to perform specific work-related functions and found that Plaintiff could perform a full or wide range of light exertional level work.  (R. at 19).  The ALJ determined that Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently, could stand for four hours (in thirty minute intervals), could walk for two hours (in thirty minute intervals), could sit for about six hours (in

one hour intervals), and had postural limitations that restricted

him to only balancing and climbing occasionally.  (R. at 19).

The ALJ also considered Plaintiff's functional limitations and

restrictions when he questioned the VE.  (R. at 198).

In considering Plaintiff's symptoms, the ALJ noted that he

must follow a two-step process:

> It must first be determined whether there is an
> underlying medically determinable physical or mental
> impairment(s) . . . .
>
> Second, once an underlying physical or mental
> impairment(s) that could reasonably be expected to
> produce the claimant's pain or other symptoms has been
> shown, the [ALJ] must evaluate the intensity,
> persistence, and limiting effects of the claimant's
> symptoms to determine the extent to which they limit
> the claimant's ability to do basic work functions . . .
> [and] the undersigned must make a finding on the
> credibility of the statements based on a consideration
> of the entire record.

(R. at 19).  Subsequently, the ALJ cited specific medical

evidence in the record to support his RFC determination.  The ALJ

discussed Plaintiff's visit with Dr. Kutalek in May 2002, whose

impressions included recurrent supraventricular tachycardia,

Wolff-Parkinson-White syndrome, and coronary artery disease,

status post aortocoronary bypass graft two years ago with recent

negative stress test.  In addition, the ALJ noted that Plaintiff

underwent an ablation in May 2002 and that at his follow-up in

October 2002, Dr. Unwala reported that Plaintiff was relatively

stable and had no significant angina.  (R. at 21).[3]

_____

[3] The ALJ also considered medical records from after the date
last insured, December 31, 2002, including Plaintiff's visit to

Furthermore, the ALJ's function-by-function analysis included a discussion of Plaintiff's daily activities and previous medical conditions not documented through medical records.  (R. at 22-23).

Plaintiff further alleges in his complaint that when determining Plaintiff's RFC, the "Commissioner . . . failed to properly weigh the medical evidence of record in affording insufficient weight to the testimony of plaintiff's own treating physicians which supports a finding of disability."[4]  (Pl.'s Compl. 2).  The Third Circuit has held that the opinion of a treating physician "should be accorded greater weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)) (citation and internal quotations omitted).  However, state agency consultants are "highly qualified physicians . . . who are also experts in Social Security Disability Evaluation." 20 C.F.R. § 404.1527(f)(2)(I).  "If the ALJ rejects probative evidence from a treating physician he is required to explain why."  Correa v. Commissioner of Soc. Sec., 381 F. Supp. 2d 386, 295 (D.N.J. 2004).

----

Dr. Unwala in March 2003, Plaintiff's follow-up with Dr. Kotler in May 2003, medical records from Cooper Hospital in 2004, and Plaintiff's examination by Dr. Korda in 2004.  (R. at 21).
[4] Plaintiff does not address this argument in his brief.

23

Plaintiff's argument that the ALJ did not give sufficient weight to the treating physician's report regarding his ability to perform work-related physical activities is without merit. Even though a treating physician's testimony generally is accorded more weight, the ALJ provided an explanation for his findings.  After discussing Dr. Lundy's assessment in his opinion, the ALJ stated that he assigned little or no weight to the report because it was completed three years after the expiration of Plaintiff's last insured status, and Dr. Lundy did not indicate what period of time the report covered.[5]  (R. at 22).  Moreover, even if Dr. Lundy based his report on his medical evaluations of Plaintiff, Dr. Lundy began treating Plaintiff in January 2004, after the relevant time period.  The ALJ's rejection of Dr. Lundy's assessment was supported by substantial evidence in the record.

### 2. *Substantial Gainful Activity*

Plaintiff alleges that his former work, which the ALJ considered, does not constitute past relevant work for the purposes of a Step Four denial because his former work as a bartender and a receptionist/car salesman did not qualify as substantial gainful activity.  (Pl.'s Br. 13).  At Step Four, the

---

[5] Dr. Lundy's report, Exhibit 9F, dated November 4, 2005 appears to be missing numerous pages.  (R. 161-63).  It seems that the record contains, and the ALJ reviewed, an edited version of the report.

determination that a claimant can perform past relevant work, and is therefore not disabled, is made by comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work (either as the claimant actually performed it or as it is generally performed in the national economy).  20 C.F.R. § 404.1560(b); SSR 82-61.  Past work experience is relevant when it was performed within the last 15 years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity.  20 C.F.R. § 1560(b)(1); 20 C.F.R. § 404.1565(a); SSR 82-62.  The "[c]apacity to do past work may be indicative of the capacity to engage in [substantial gainful activity] when that work experience constituted SGA and has current relevance considering duration and recency."  SSR 82-62.  "Substantial gainful activity is work activity that is both substantial and gainful[:]"  It is work that involves doing significant physical or mental activities for pay or profit.  20 C.F.R. § 404.1572(a) and (b).

When evaluating whether the claimant has engaged in SGA, the individual's monthly earnings are considered.  20 C.F.R. § 404.1574(a)(1) and (b)(2).  If the claimant's monthly earnings averaged more than $500 per month from January 1990 through June 1999, more than $700 per month from July 1999 through December 2000, more than $740 per month in 2001, and more than $780 per month in 2002, then there is a strong presumption that the

claimant has engaged in substantial gainful activity sufficient to constitute past relevant work.  20 C.F.R. § 404.1574(b)(2)(Table 1); Program Operations Manual System ("POMS") DI10501.015 (Table of SGA earnings guidelines).

In 1992 and 1993, Plaintiff earned $2,255.81 and $3,003.08, respectively, working as a bartender.  (R. at 56).  In 1997 and 1998, Plaintiff worked as a clerk and earned $6,722.70 and $5,321.47.  (R. at 56).  Finally, Plaintiff worked as a receptionist/car salesman in 2001 and 2002, in which he earned $6,450.00 and $6,750.00.  (R. at 56).  Only Plaintiff's position as a clerk in 1997, where he earned an average of $560.22 per month, constitutes substantial gainful activity.  Plaintiff's work as a bartender and receptionist/car salesman were not SGA, and while the ALJ acknowledged that the receptionist position was not SGA, he engaged in a discussion of this job both within his opinion and with the VE at the hearing.  The ALJ and VE should not have considered Plaintiff's jobs as a bartender or a receptionist/car salesman as past relevant work for purposes of a Step Four denial.  However, because Plaintiff's job as a clerk does qualify as SGA, and was performed within fifteen years of the expiration of his last insured status and done for long enough for him to have learned it, it was appropriate for the ALJ to consider Plaintiff's work as a clerk as part of the past relevant work analysis.

3. *Vocational Expert Testimony and Past Relevant Work*

Plaintiff alleges that the ALJ based his decision on flawed vocational expert testimony because the ALJ failed to follow SSR 00-4p. (Pl.'s Br. 18).   Social Security Ruling 00-4p

> requires that the ALJ ask the vocational expert whether
> any possible conflict exists between the vocational
> expert's testimony and the DOT, and that, if the
> testimony does appear to conflict with the DOT, to
> 'elicit a reasonable explanation for the apparent
> conflict.'   The Ruling requires that the explanation be
> made on the record and that the ALJ explain in his
> decision how the conflict was resolved.

Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002) (quoting SSR 00-4p).

The Third Circuit has held that "inconsistencies between vocational expert testimony and DOT information may run afoul of [the] more general requirement [to develop the record] — and may warrant reversal as a result — even when they do not come within the literal obligation imposed by SSR 00-4p" to ask whether there is a conflict between the VE's testimony and the DOT when the VE provides evidence about the requirements of a job or occupation. Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); See also Boone v. Barnhart, 353 F.3d 203 (3d Cir. 2003) (reversing and remanding the ALJ's ruling, prior to the enactment of SSR 00-4p, because the VE's testimony regarding the plaintiff's exertional and skill levels directly conflicted with the

27

exertional and skill levels of the jobs listed in the DOT, and thus, the VE's testimony did not constitute substantial evidence that the ALJ could rely upon for his Step Five determination). However, "inconsistencies need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." Rutherford, 399 F3.3d at 557; see also Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004) (affirming district court because substantial evidence supported the ALJ's determination at Step Five even though there were inconsistencies between the VE's testimony and the DOT).

The VE's testimony in this matter was consistent with the information in the DOT.  Based on Plaintiff's description of his job as a clerk, the VE testified that this job was most similar to a county clerk (DOT code 205.362.010), which is a sedentary, semiskilled job with a SVP of 3.  The VE further testified that when he reviewed the record, it appeared that Plaintiff performed this job at a sedentary level.  (R. at 197).  However, after hearing Plaintiff's testimony at the hearing, the ALJ noted that he might have actually performed the job as a clerk at the light level because of the lifting of the mailbag and mortgage books. (R. at 197).

Even if there were minor inconsistencies between the VE's testimony and the information in the DOT, those inconsistencies are not fatal if there was substantial evidence to support the

ALJ's decision that Plaintiff was able to perform his past relevant work as a clerk.  However, Plaintiff argues that the ALJ failed to comply with SSR 82-62 during the Step Four denial because the ALJ did not compare the demands of light work[6] with the demands of his past relevant work.  (Pl.'s Br. 15, 16-17).

SSR 82-62 states:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.  Furthermore, the ALJ must develop the record and make specific findings comparing a claimant's capabilities with the demands of his or her past relevant work.  <u>See</u> <u>Burnett</u>, 220 F.3d at 125.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking and standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

In a work history report, Plaintiff noted that his job as a
clerk required thirty minutes of walking, thirty minutes of
standing, and four hours of sitting.  (R. at 78).  Plaintiff
stated that he performed no lifting, carrying, stooping,
kneeling, crouching, or crawling, although he also indicated that
he frequently lifted less than ten pounds.  (R. at 78).  At the
hearing, Plaintiff testified that his clerk job also included
carrying mortgage books that weighed approximately eight to ten
pounds and carrying a mail bag that weighed the same.  (R. at
195).  After identifying a clerk position in the DOT (DOT code
205.362.010), the VE testified that Plaintiff performed his
former work as a clerk at a sedentary level[7] and noted that he
may have performed it at a light level depending on the lifting
requirements.  (R. at 197).  The VE also stated that the clerk
position in the DOT is performed at a sedentary level.  (R. at
197).

The ALJ's reliance on the VE's determination that Plaintiff
could return to his past relevant work is problematic because it
is unclear whether or not the VE in his testimony, on which the

_____

[7] "Sedentary work involves lifting no more than 10 pounds at a
time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools. Although a sedentary job is
defined as one which involves sitting, a certain amount of
walking and standing is often necessary in carrying out job
duties. Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met." 20 C.F.R. §
404.1567(a).  In order to be able to perform sedentary work, a
claimant must be able to sit for approximately six hours out of
an eight hour work day.  SSR 83-10.

ALJ relied, took into consideration the intervals proffered in the ALJ's hypothetical to the VE.  When the ALJ questioned the VE regarding Plaintiff's past relevant work, the ALJ stated, in pertinent part:

> Assume this individual could sit for up to one hour at a time.  Assume this individual could sit for a total of six hours out of eight in the workday.  Assume this individual could stand for 30 minutes at a time. Assume this individual could stand for a total of four hours out of eight in the workday.  Assume this individual could walk for up to 30 minutes at a time. Assume this individual could walk for a total of two hours out of eight in the workday.

(R. at 198).  The VE responded that Plaintiff would be able to return to his former job as a clerk both as he performed it and as it is generally performed in the national economy.  (R. at 198-99).  There is neither evidence in the ALJ's opinion nor in the hearing transcript as to the impact of Plaintiff's sitting, standing, and walking limitations on Plaintiff's ability to perform his past relevant work as a clerk.  It is unclear whether the intervals in Plaintiff's RFC comport with Plaintiff's past relevant work as defined in the DOT or the definition of sedentary work.[8]

---

[8] It is worth noting that a claimant who must alternate between sitting and standing "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work."  SSR 83-12.  See also Jesurm v. Secretary of U.S. Dept. of Health & Human Services, 48 F.3d 114 (3d Cir. 1995).

31

Moreover, the ALJ asked the VE: "[i]f an individual had to take frequent, unscheduled breaks during the day, would that affect your answer to the prior hypothetical question?" (R. at 199). The VE expert responded: "That would not sustain any kind of employment." (R. at 199). Plaintiff's limitations may be inconsistent with Plaintiff's job as a clerk, either as he performed it or as it is generally performed in the economy. While the ALJ may well reach the same result on remand, this Court cannot say at this juncture that the ALJ's decision is supported by substantial evidence as it is unclear whether the demands of Plaintiff's past relevant work were analyzed in terms of the intervals in Plaintiff's RFC. On remand, the ALJ should develop the record and compare the Plaintiff's exertional limitations with the demands of Plaintiff's past relevant work as a clerk.

Lastly, Plaintiff claims that the ALJ did not consider the impact of Plaintiff's cardiovascular impairment on his ability to perform his past relevant work. (R. 15-16). This Court agrees. It is unclear whether the ALJ properly considered Plaintiff's cardiac impairments when he determined that Plaintiff could return to his past relevant work. SSR 82-62 provides:

> Persons with physical impairments (e.g., cardiovascular . . . ) may have performed stressful tasks. This may also require a decision as to whether the impairment is compatible with the performance of such work.

32

SSR 82-62.  The ALJ did not discuss how symptoms from Plaintiff's cardiac impairments affected Plaintiff's ability to return to his past relevant work as a clerk between 1998 and 2002.  Therefore, it is unclear whether the ALJ compared Plaintiff's "credible" cardiac symptoms with his past relevant work.  As such, this Court finds the ALJ's opinion lacking the required substantial evidence.

**V.   Conclusion:**

For the reasons discussed above, the Court finds that the ALJ's determination of Plaintiff's ability to return to his past relevant work is not supported by substantial evidence.  The decision below is vacated, and this case is remanded to the ALJ for further consideration consistent with this opinion.  An accompanying Order will issue this date.


Dated:  July 18, 2008                    s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE